UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN W. CURRYTTO, | : | |
|     Plaintiff, | : | CASE NO. 3:18-cv-808 (MPS) |
| | : | |
| v. | : | |
| | : | |
| JOHN DOE, et al. | : | |
|     Defendants. | : | October 9, 2018 |

**RULINGS ON MOTION TO AMEND COMPLAINT [Doc.#19], MOTION FOR APPOINTMENT OF COUNSEL [Doc.#20], AND MOTION FOR PRELIMINARY INJUNCTIVE RELIEF [Doc.#21]**

On May 11, 2018, the plaintiff, Kevin W. Currytto, an inmate currently confined at Osborn Correctional Institution ("Osborn") in Somers, Connecticut, brought a civil action *pro se* under 42 U.S.C. § 1983 against thirty employees of the Connecticut Department of Correction ("DOC") for violating his rights under the United States Constitution, Connecticut Constitution, and the Americans with Disabilities Act. He raised four separate unrelated causes of action against officials at three separate prison facilities. *See* Initial Review Order [Doc.#15] at 2.

On July 10, 2018, this Court dismissed the plaintiff's complaint without prejudice for failure to comply with Federal Rule of Civil Procedure 20. Initial Review Order at 2-3. The Court ruled that the plaintiff had improperly joined multiple unrelated claims in his complaint. *Id.* In dismissing the complaint, the Court gave the plaintiff one opportunity to amend his complaint alleging facts in support of one of the claims asserted therein. *Id.* at 3.

On July 18, 2018, the plaintiff filed a motion to amend his complaint and attached an amended complaint alleging facts in support of one of his constitutional claims: the

Eighth Amendment claim for deliberate indifference to serious medical needs for failure to adequately treat his arm injury, heart condition, and mental health needs. Mot. to Amend Compl. [Doc.#19]; Am. Compl. [Doc.#19-1]. The plaintiff also filed a motion for the appointment of counsel [Doc.#20] and a motion for preliminary injunctive relief [Doc.#21]. For the following reasons, the Court will GRANT the plaintiff's motion to amend his complaint, permit his amended complaint to proceed in part, and DENY the motion for appointment of counsel. The Court will postpone its ruling on the motion for preliminary injunctive relief until after the defendants have had a chance to respond to the motion and to the amended complaint.

I. Motion to Amend Complaint [Doc.#19]

Because the Court already granted the plaintiff the opportunity to amend his complaint, and the plaintiff has complied with the Court's instruction to assert one of the improperly joined claims in the amended complaint, the Court hereby GRANTS the motion to amend [Doc.#19] and reopens this case. The Court will now review the amended complaint under 28 U.S.C. § 1915A.

A. Standard of Review

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not

sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

B. Factual Allegations

The amended complaint [Doc.#19-1] alleges that fifteen DOC officials violated his Eighth Amendment protection against cruel and unusual punishment by acting with deliberate indifference to his serious medical needs. The fifteen defendants are Dr. Vicki Blumberg, Nurse Jane Doe 1, Health Services Administrator Richard Furey, Dr. Joseph Breton, Dr. Johnny Wright, Nurse H. O'Connor, Nurse Tiffany Dyle, Nurse S. Beckford, Nurse Jane Doe 2, Dr. John Doe, Nurse Jane Doe 3, Nurse Chris Doe, Dr. Leonard Santarrico, Nurse St. John, and Dr. Matthew Barr. The plaintiff is suing these defendants for damages and injunctive relief.

The plaintiff suffers from chronic neuropathic pain in his right arm as a result of being bitten by a K-9 dog during an arrest in Bridgeport in 2010. Am. Compl. ¶ 2. The bite had punctured and torn his right bicep and triceps and caused significant nerve damage. *Id.* at ¶¶ 3-4. He also suffers from mental illnesses, including delusional/schizoaffective disorder, and an undiagnosed heart condition. *Id.* at ¶¶ 5, 156.

The plaintiff was admitted into DOC custody on May 1, 2017 and placed in the Bridgeport Correctional Center ("BCC"). Am. Compl. ¶ 1. One week after admission,

3

he underwent a health screening with Dr. Blumberg. *Id.* at ¶¶ 7-8. For his chronic neuropathic pain, Dr. Blumberg prescribed the plaintiff the pain reliever Elavil, ibuprofen, and blood pressure medication. *Id.* at ¶ 9. The plaintiff was also given an EKG for his heart condition. *Id.* at ¶ 10. On May 15, the plaintiff was evaluated by Dr. Dr. Lowthert for psychiatric issues associated with anxiety. *Id.* at ¶ 11. Dr. Lowthert offered to prescribed him Remeron and Trazadone for his anxiety, but the plaintiff declined the offer and refused the medication. *Id.* at ¶ 12.

The combined medication regimen ultimately caused the plaintiff to experience several side effects, including grogginess, lethargy, and an inability to function normally. Am. Compl. ¶ 13. On August 4, 2017, he wrote a request to the Nurse Jane Doe 1 in the medical unit at BCC for his medications to be discontinued. *Id.* at ¶¶ 14-15. Although he had intended on receiving other medications for his chronic pain, Doe 1 "mistakenly" discontinued all of his medications. *Id.* at ¶¶ 15-16.

On August 17, the plaintiff wrote another request to have his blood pressure medication restored and to be evaluated by a physician for his chronic neuropathic pain in his arm. Am. Compl. ¶ 17. Dr. Blumberg received the request and reordered the blood pressure medication. *Id.* at ¶ 18. However, the plaintiff was never again evaluated by the medical unit at BCC. *Id.* at ¶ 19. He alleges that Blumberg "did not exercise reasonable care" in addressing his chronic medical condition. *Id.* at ¶ 21. Both Blumberg and Doe 1 failed to place the plaintiff on "medical hold" until his health needs were addressed, which is required by the DOC Administrative Directives. *Id.* at ¶¶ 23-24.

On September 19, 2017, the plaintiff was transferred to MacDougall-Walker Correctional Institution ("MWCI") for classification assessment. Am. Compl. ¶ 25. In

preparing his transfer summary, Doe 1 failed to record the plaintiff's medical history or need for follow-up care. *Id.* at ¶ 26. Upon his arrival at MWCI, the plaintiff underwent another health screening. *Id.* at ¶¶ 28-29. He was evaluated by Nurse Chris Doe on September 21. *Id.* at ¶ 30. The plaintiff reported to Chris Doe that he suffered from chronic neuropathic pain in his arm from a dog bite and requested to be placed on the list to see a physician, but Chris Doe said to him, "I see nothing about dog bites in your file." *Id.* at ¶ 32. The plaintiff, however, has visible puncture wounds and scars on his right arm. *Id.* at ¶¶ 33-34. After conducting a cursory observation of the plaintiff's body, Chris Doe noted in a report that the plaintiff had "faint small scars" and "no documentation of [a] dog bite in [his] chart." *Id.* at ¶¶ 35-39. Plaintiff alleges that Chris Doe failed to conduct a comprehensive physical examination of him and improperly relied on Nurse Doe 1's transfer summary from BCC. *Id.* at ¶¶ 40-41.

The plaintiff explained in detail his medical history to Chris Doe, including that he had been in pain since he had to discontinue his medications at BCC. Am. Compl. ¶¶ 42-45. However, Chris Doe improperly documented his medical history and failed to conduct a thorough physical examination or place the plaintiff on the list to see a doctor. *Id.* at ¶¶ 47, 49. He gave the plaintiff a bottle of Motrin tablets for his chronic pain and sent him back to his housing unit. *Id.* at ¶¶ 48, 51. The Motrin did not adequately treat his chronic pain. *Id.* at ¶ 49.

On September 26, 2017, while housed at MWCI, the plaintiff began experiencing a sharp pain in his chest, near his heart. Am. Compl. ¶ 52. Because of his mental disability, the plaintiff believed that this internal pain was related to his fear of being attacked by the police with secretive fiber optic equipment, and he wrote a request for

mental health assistance. *Id.* at ¶¶ 53-54. Shortly thereafter, the plaintiff was evaluated by Dr. Santarrico. *Id.* at ¶ 57.

The plaintiff explained to Santarrico his "traumatic" history with the police, including the dog bite from his arrest in 2010, and that he suffered from internal pain near his heart. Am. Compl. ¶¶ 59-60. After a brief discussion, the plaintiff was sent back to his housing unit. *Id.* at ¶ 61. Dr. Santarrico did not conduct a physical examination of the plaintiff, contact any additional medical personnel, provide any form of diagnostic testing, or address his heart condition in any way. *Id.* at ¶¶ 62-65. As a result of his discussion with Santarrico, the plaintiff's DOC mental health classification score was raised to 4 out of a scale from 1 to 5. *Id.* at ¶ 67.

On September 26, 2017, the plaintiff was transferred from MWCI to Osborn and placed in one of the health care units therein. Am. Compl. ¶ 68. Dr. Santaricco failed to place the plaintiff on a "medical hold" for his heart condition in accordance with DOC Administrative Directives. *Id.* at ¶ 69. Chris Doe prepared the plaintiff's transfer summary and wrote that the plaintiff needed "follow-up care" for his physical and mental health needs, but he did not evaluate the plaintiff before the transfer. *Id.* at ¶¶ 70-74.

At his health screening at Osborn, Nurse H. O'Connor directed the plaintiff to chronic care housing in the mental health unit and indicated that he should be placed on "cardiac status." Am. Compl. ¶¶ 77-78. She did not, however, adhere to the "follow-up care" instructions from Chris Doe. *Id.* at ¶ 79. The plaintiff waited eighteen days at Osborn to be seen by a physician. *Id.* at ¶ 81. The medical unit at Osborn was run by Nurse Jane Doe 2 and Dr. John Doe. *Id.* at ¶ 80.

On October 15, the plaintiff was evaluated by Nurse Dyle. Am. Compl. ¶ 83. He explained to Dyle his chronic neuropathic pain and heart condition. *Id.* at ¶¶ 84-86. Dyle thereafter performed a diagnostic EKG on the plaintiff, which was later reviewed by Dr. Matthew Barr. *Id.* at ¶ 87. Dr. Barr noted that there were "no significant stat changes," and Dyle gave the plaintiff a three-day supply of ibuprofen. *Id.* at ¶¶ 87-88. Dyle informed the plaintiff that he would be evaluated by Dr. Breton within two weeks and then sent him back to his housing unit. *Id.* at ¶ 89.

The plaintiff waited over three months to be seen by Dr. Breton or Dr. Wright, during which he continued to suffer pain in his right arm and chest. Am. Compl. ¶¶ 90-91. On November 19, 2017, he filed a request to Dyle, indicating that he was waiting to be seen by either physician and that he needed more pain medication. *Id.* at ¶¶ 93-94. The plaintiff was later informed that he was scheduled to be seen by Dr. Breton on November 28. *Id.* at ¶ 95. Dyle also gave him another three-day supply of pain medication. *Id.* at ¶ 96.

On November 28, the plaintiff wrote another request because he had not been evaluated by Dr. Breton as promised. Am. Compl. ¶ 98. Dyle then informed him that his appointment had been rescheduled for two weeks later. *Id.* at ¶ 99. That same day, the plaintiff met with Administrator Furey and discussed with him his medical issues. *Id.* at ¶ 100. Furey informed him that his appointment with Breton was scheduled for December 4, 2017 and that he would speak with Breton about his medical issues. *Id.* at ¶¶ 101-02. However, the plaintiff was never seen by Breton on December 4. *Id.* at ¶ 104.

On December 11, the plaintiff wrote a request to Furey indicating that he still had not been evaluated by Breton. Am. Compl. ¶ 105. Furey responded that his appointment

"would be soon." *Id.* at ¶ 106. The plaintiff wrote another request on December 18 explaining his medical problems and contesting the delay in his appointment. *Id.* at ¶ 107. Thereafter, Nurse Beckford responded to the request, indicating that the plaintiff's appointment was forthcoming. *Id.* at ¶ 108. On January 2, 2018, Nurse Dyle informed him that his appointment was scheduled for the end of the month. *Id.* at ¶ 109.

On January 15, 2018, the plaintiff filed an administrative grievance against Nurse Dyle, Nurse Beckford, Nurse O'Connor, Dr. Breton, and Administrator Furey for the delay in treatment for his chronic medical needs. Am. Compl. ¶¶ 110-12. That same day, he learned that Dr. Breton had retired as the physician at Osborn, of which Dr. Wright was aware. *Id.* at ¶¶ 113, 125.

On January 31, the plaintiff was finally evaluated by Dr. Wright. Am. Compl. ¶ 114. After reviewing the plaintiff's medical history, Wright requested approval from the Utilization Review Committee ("URC") for a diagnostic CT scan to rule out a possible "foreign body" in the plaintiff's chest. *Id.* at ¶ 116. Wright never performed a physical examination of the plaintiff's body, or listened to the plaintiff's heart rate. *Id.* at ¶¶ 117-18. He also failed to refer the plaintiff to a cardiologist. *Id.* at ¶ 120.

Shortly after his appointment with Dr. Wright, the plaintiff appealed his administrative grievance, which had been ruled "compromised." Am. Compl. ¶ 128. In responding to the appeal, Dr. Wright stated that the plaintiff's medical appointment "took some time because one physician resigned and one was out sick." *Id.* at ¶ 129.

On February 2, 2018, two days after the plaintiff's medical appointment with Dr. Wright, the Hartford Courant wrote a report about the UConn Health Care Center's failure to provide adequate medical care to Connecticut prisoners. Am. Compl. ¶ 132.

The article addressed inmate deaths, errors in standard protocol and quality controls, and failures to properly diagnose patients. *Id.* In a sworn deposition, Dr. Breton wrote that he had retired from Osborn because of his disapproval with the medical procedures, including the delays in treatment. *Id.* at ¶ 144. The plaintiff alleges that Furey, Breton, Wright, Beckford, O'Connor, and Dyle were aware of this article but still provided substandard care for his medical issues. *Id.* at ¶ 133.

On February 20, 2018, the URC denied Dr. Wright's request for a diagnostic CT scan but directed him to send the plaintiff for a mental health evaluation. Am. Compl. ¶¶ 134-35. However, Dr. Wright never referred the plaintiff for mental health treatment. *Id.* at ¶ 135. On February 26, he performed an x-ray on the plaintiff and made a second URC request without any mental health evaluation. *Id.* at ¶ 136. Shortly before filing his second URC request, Dr. Wright had a discussion with Nurse St. John, a mental health clinician regarding the initial URC denial. Am. Compl. ¶ 137. Nurse St. John never evaluated or met with the plaintiff. *Id.* at ¶ 138. The URC ultimately denied the second request for diagnostic testing. *Id.* at ¶ 140.

The plaintiff continues to suffer from heart complications due to the failures of Breton, Wright, and Barr. Am. Compl. ¶ 143. Beginning in late February 2018, he was given stronger pain medication for his neuropathic pain, which caused him further complications. *Id.* at ¶¶ 148-49.

On May 11, 2018, the plaintiff filed the instant civil rights complaint in this Court. Am. Compl. ¶ 150. The next day, Nurse Jane Doe 3 stopped his pain medication. *Id.* Two weeks later, she placed him on a new regimen of Neurontin. *Id.* at ¶ 151.

Nevertheless, the plaintiff is still suffering from an undiagnosed heart condition due to the failures of Breton, Wright, and Barr. *Id.* at ¶ 156.

C. <u>Analysis</u>

The plaintiff is suing all fifteen defendants for acting with deliberate indifference to his serious medical needs, particularly his arm injury, heart condition, and mental health needs, in violation of his Eighth Amendment protection against cruel and unusual punishment. He does not specify whether he is suing the defendants in their individual capacities, official capacities, or both. To the extent he seeks damages against the defendants in their official capacities, those claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). In order to recover damages against the defendants in their individual capacities, the plaintiff must show that each of them were personally involved in the alleged constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Thus, for purposes of this review, the Court must decide whether the plaintiff has stated a plausible Eighth Amendment claim against all fifteen defendants.

Deliberate indifference to serious medical needs under the Eighth Amendment occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137-38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In order to state a deliberate indifference claim, the plaintiff must allege both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)). Objectively, the alleged deprivation must

be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, the defendants must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).

After careful review of the factual allegations in the amended complaint, the Court concludes that the plaintiff has stated a plausible Eighth Amendment claim against defendants Santarrico, Furey, Breton, Wright, O'Connor, Dyle, and Beckford. The claim against Santarrico is based on his alleged failure to examine the plaintiff, contact additional medical personnel, perform diagnostic testing, or otherwise provide any treatment for the plaintiff's heart condition and/or mental health needs. *See* Am. Compl. ¶¶ 59-65. Because the plaintiff claims that Santarrico failed to provide *any* treatment for his conditions, the Court's review is limited to the severity of the plaintiff's conditions. *See Hilton v. Wright*, 928 F. Supp.2d 530, 547 (N.D.N.Y. 2013) (quoting *Salahuddin*, 467 F.3d at 280)). Construing his allegations liberally, I find that the plaintiff has stated that he suffers from a serious condition in his chest cavity and mental illnesses for which additional diagnostic testing was ultimately sought. Thus, the Court will permit the Eighth Amendment claim to proceed against Santarrico in his individual capacity for damages and in his official capacity for injunctive relief.

The claim against Furey, Breton, Wright, O'Connor, Dyle, and Beckford is based on the three-month delay in treatment for his chronic neuropathic pain and heart condition. *See* Am. Compl. ¶¶ 90-91. "When the basis for a prisoner's Eighth

Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Smith*, 316 F.3d at 185 (emphasis in original; internal quotations omitted); *see also Torres v. Alers*, No. 04-civ-1127 (LAP), 2005 WL 2372741, *2 (S.D.N.Y. Sep. 26, 2005) (court looks to severity of consequences brought about by alleged delay in medical treatment). Here, the plaintiff alleges that his medical appointment at Osborn for his conditions was rescheduled multiple times over the course of three months, from October 2017 to the end of January 2018. The delay caused the plaintiff to file an administrative grievance against these defendants for their inability to schedule him for medical treatment. Based on these allegations, the Court will permit the Eighth Amendment claim to proceed against Furey, Breton, Wright, O'Connor, Dyle, and Beckford in their individual capacities for damages and in their official capacities for injunctive relief.

The plaintiff has not, however, stated a plausible Eighth Amendment claim against Blumberg, Jane Doe 1, Jane Doe 2, Jane Doe 3, Dr. John Doe, Chris Doe, St. John, or Barr. There are no factual allegations showing that these defendants were deliberately indifferent to the plaintiff's medical needs. Blumberg provided medication for the plaintiff on two separate occasions, and Doe 1 discontinued the medications after the plaintiff complained of harmful side effects. Am. Compl. ¶¶ 9-18. Chris Doe evaluated the plaintiff's medical history and provided pain medication for him. *Id.* at ¶¶ 30-51. The only allegation the plaintiff makes against Jane Doe 2 and Dr. John Doe is

that they ran the medical unit at Osborn, which is insufficient to show their personal involvement in the constitutional deprivation. *See Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). As for Jane Doe 3, the plaintiff only alleges that she stopped the pain medication prescription for the plaintiff on May 11, 2018 and placed him on a new regimen the next day. *See* Am. Compl. ¶¶ 150-51. The only allegation against St. John is that she spoke with Dr. Wright before submitting the second URC request without evaluating the plaintiff. *Id.* at ¶¶ 137-38. Although he mentions Barr in connection with his ongoing heart problems, the plaintiff does not explain what actions, if any, showed Barr's deliberate indifference to his medical needs.

Throughout his amended complaint, the plaintiff expresses disagreement with many of the decisions made by these defendants and argues that they could have done more to address his arm, heart, and mental health conditions. However, it is well-established that a difference of opinion regarding what constitutes an appropriate response and treatment does not rise to the level of deliberate indifference under the Eighth Amendment. *See Ventura v. Sinha*, 379 F. App'x 1, 2–3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Even if these defendants were negligent in the manner by which they treated the plaintiff, failure to conform to a standard of care does not establish an Eighth Amendment violation. *See Salahuddin*, 467 F.3d at 280. In light of the foregoing, the Eighth Amendment claim against Blumberg, Jane Doe 1, Jane Doe 2, Jane Doe 3, Dr. John Doe, Chris Doe, St. John, and Barr is dismissed.

II.     Motion for Appointment of Counsel [Doc.#20]

In conjunction with his amended complaint, the plaintiff has filed a motion for the appointment of *pro bono* counsel. Mot. for Appointment of Counsel [Doc.#20]. He argues that he is indigent, suffers from mental illness, and that his complaint involves complex legal issues. *Id.* He also states that he has attempted to obtain assistance from at least three attorneys, none of whom were able to offer him any assistance. *Id.*

The Court "may request an attorney to represent any person unable to afford counsel." 42 U.S.C. § 1915 (e)(1). "District courts exercise substantial discretion in deciding whether to appoint counsel . . . ." *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 204 (2d Cir. 2003). The Second Circuit has cautioned against the "routine appointment of counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173-74 (2d Cir. 1989). Before appointment is even considered, the indigent movant must establish that he is unable to obtain counsel. *Id.* at 173; *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). If the movant satisfies that threshold requirement, the Court must then consider the merits of his claim and determine whether his position "seems likely to be of substance." *Hodge*, 802 F.2d at 61. If so, the Court should then consider other factors bearing on the need for appointment of counsel, including the movant's ability to investigate the factual issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the movant's apparent ability to present the case, and the complexity of the legal issues involved. *Id.* at 61-62.

The record in this case consists solely of an amended complaint and is, therefore, insufficient for this Court to determine whether the plaintiff's claims are sufficiently

14

meritorious to warrant the appointment of *pro bono* counsel. The plaintiff's motion is premature. Thus, the Court will DENY the motion for appointment of counsel without prejudice subject to refiling at a later stage of litigation.

   III.   Motion for Preliminary Injunctive Relief [Doc.#21]

The plaintiff has also moved for preliminary injunctive relief against defendants Furey and Wright. Mot. for Prelim. Inj. Relief [Doc.#21]. He essentially argues that his continuing heart condition warrants immediate diagnostic testing and treatment, which Wright and Furey refuse to provide. *Id.* Because neither Wright nor Furey have been served with the amended complaint, the Court cannot decide the plaintiff's motion at this time. The Court will, however, order both defendants to respond to the plaintiff's motion in conjunction with their answer to the amended complaint.

**ORDERS**

(1) The plaintiff's motion to amend his complaint [Doc.#19] is GRANTED. The clerk is directed to reopen this case and docket the amended complaint [Doc.#19-1] as a separate entry.

(2) The case may proceed on the Eighth Amendment claim for deliberate indifference to serious medical needs against defendants Furey, Breton, Wright, O'Connor, Dyle, Beckford, and Santarrico in their individual capacities for damages and in their official capacities for injunctive relief. The claim against defendants Blumberg, Jane Doe 1, Jane Doe 2, Jane Doe 3, John Doe, Chris Doe, St. John, and Barr is dismissed. The clerk is directed to terminate Correction Officers John Does 1-6, Murphy, Grant, Cyr, Williams, Lieutenants John Does 1-3, Long, Chapdelaine, Gaw, Chris Doe, and Jane Doe as defendants to this action.

(3) The clerk shall verify the current work addresses for Furey, Breton, Wright, O'Connor, Dyle, Beckford, and Santarrico with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint to them at the confirmed addresses within **twenty-one (21) days** of this order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshal Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(4) The clerk shall prepare a summons form and send an official capacity service packet containing the amended complaint to the United States Marshals Service. The United States Marshal Service shall, within **twenty-one (21) days** of the date of this order, serve the documents on the defendants in their official capacities by delivering them to the Office of the Attorney General, 55 Elm Street, Hartford, Connecticut 06141, and file a return of service within **thirty (30) days** from the date of this order.

(5) The defendants shall file their response to the amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules of Civil Procedure. **In conjunction with their answer, the defendants must also file a written response to the plaintiff's motion for preliminary injunctive relief [Doc.#21].**

(6) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six**

**months (180 days)** from the date of this order.  Discovery requests need not be filed with the Court.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(8) The plaintiff's motion for appointment of counsel [Doc.#20] is DENIED without prejudice subject to refiling at a later stage of litigation.

It is so ordered.

Dated at Hartford, Connecticut this 9th day of October 2018.

_____/s/_____<br>
Michael P. Shea<br>
United States District Judge